Thank you, Your Honor, and good morning. Good morning. I'm Douglas Gillies, representing Margaret Carswell, and the traffic was pretty good because we came in early today. I say with some emotion that today we begin a new chapter in our history, and I find that astonishingly promising. It's time to start rebuilding. We've been through four years of devastation, economically, environmentally, and it's time now to begin to make things right. Margaret Carswell alleged, among other things, that she signed an application that was then filled in that said her income was $50,700 a month. It said that her nonprofit was worth $1 million. Those numbers were made up by whoever it was that prepared the paperwork for WAMU. Interestingly, I also represent Darush Javahari in Federal District Court Central District, and his application was filled out by a different broker, and it also says $50,700 a month. What's going on here? What we see is massive lawsuits to hold the banks accountable for underwriting fraud because that has cost the trusts, the investors, the government, tremendous amounts of money and the taxpayers. But on the other side, with the homeowner, we continue to say, oh, you didn't pay your loan. We don't want to hear from you. We will not even let you go past a motion to dismiss. Thousands and thousands of those have happened, and I believe it's now time to consider that we might balance the equation because when you throw more than 10 million families out into the street and don't ever give them a day in court, you're ceding a condition that we can't even imagine what it will lead to. Mr. Gillis, can I ask you a question about the status of this case? Was this covered by the California Anti-Deficiency Statute? In other words, your client doesn't face any debt on the note. Is that correct? I'm sorry. Your client, the bank took the house. It was a nonjudicial foreclosure. No, they haven't foreclosed. I understand, but they're about to have a nonjudicial foreclosure. If that occurs, there won't be any debt left on the note. Is that correct? Because this is covered by the Anti-Deficiency Statute. Yes, it's a first. Okay, that's why I wanted to make sure it was a first. Assuming that because it was a refinance, it still is protected. The other side, as close as I can tell, has never contended that they can chase your client on the note once they engage in a nonjudicial foreclosure. Okay, I wanted to make sure I understood that. Yes. I want to call your attention to a case which at first might seem irrelevant. It's called FHA v. Chase, and it's being prosecuted in New York State. The complaint was filed about a year ago. It's an amazingly big lawsuit, FHA suing against Chase and Wallman. But only this Monday, two days ago, Judge Denise Coakley ruled on the motion to dismiss, and one thing that she said was this. She said that it can hardly be disputed that taken together, the allegations above adequately plead that J.P. Morgan acted with fraudulent intent in misrepresenting the underwriting standards that govern the supporting loans. This is probably the leading case right now in this field on Monday. That was her decision to go forward and deny the motion to dismiss against J.P. Morgan. Also the district court here had very specific reasons why it dismissed the First Amendment complaint. Yes. Which of those were wrong? Well, first of all, it didn't take into account the fact that Chase was never the lender, not the beneficiary, was not in any position to act as the foreclosing entity. So the foreclosing entity was that CRC, right? Well, yes, but there was the assignment of the deed of trust. And that's who was on the deed of trust, right? The California Reconveyance Company was identified as a trustee on the deed of trust on the original one that your client signed? Yes, they were. But they can only act. And the original lender was WAMU. Correct. And then there was an assignment from WAMU to whatever the trust is that has investors as beneficiaries. So was there something wrong with the assignment from WAMU to the new lender? Is that the problem that you're seeing? What has come to light since the briefs were filed was, yes, that the contracts that were guiding that transition said, on the one hand, you must transfer the promissory note to the trust in order for this to be complete. On the other hand, in a different document, these are 250-page documents, it said you must not transfer the promissory note into the trust. And as it turned out, they didn't. Does it matter who owns the note? I mean, this is, as I understand it, the California courts, like I think most courts, I don't know if there's any case to the contrary except perhaps a Massachusetts one, have rejected the notion that a holder of a deed of trust can't foreclose on that deed unless they demonstrate that they own the note. This is a California state law issue, but haven't the California courts rejected that argument? That's changing, Your Honor. Well, tell me where. How's it changing? I was looking for that case, and it's new cases that I might have to send to you by letter. These are mostly federal district court cases. But it turns on California law, doesn't it? In other words, your show-me-the-note claim, if I can call it that, is a California law claim, is it not? What you're saying is that under California law, CRC is not entitled to foreclose. Well, no, there's several levels to it. First of all, these are federal banks. So to make it a problem of 50 states is to encourage chaos, and we haven't. Well, what federal statute or case requires the kind of demonstration that Judge Hurwitz has referred to as show-me-the-note? Is there a specific statutory provision or a specific binding federal precedent from this court or the Supreme Court or even something from a sister circuit that specifically says that? All of the regulations concerning the transfer of the note into the trust and securitization and all of that is all federal and New York security law. All right. So whatever happened to her note is not under California law, and the California courts can't even comprehend that. I understand that in principle, but assuming that federal law applies, what federal law, statute, regulation or binding case requires the sort of demonstration that you're arguing for? Well, first of all, we have two. There's the California law, which says that only no, I understand. I think that federal law applies, and I'm asking for your best federal authority that will support what you're saying. Okay. I can't think of the case right now. I'm sorry. I've sort of taken for granted that the transfers that took place of the note are regulated by federal law, that that leaves the state law purview. The state law says that only the lender can initiate foreclosure. Only the lender. So the question. That's the state law question I tried to ask you before. Tell me what California case. I'd understood, and I don't have the case at my fingertips right now, but I'd understood that the California Court of Appeal had rejected this very argument and said that as long as you are the record holder of a deed of trust, you may institute foreclosure proceedings without demonstrating that you're also the owner of the note. Am I wrong about that? Well, there are cases that say that you can initiate foreclosure, yes. And the statute says that, too. But that doesn't mean that you can complete it. If you don't have, and you can't prove in the course of that proceeding. Yeah. And tell me what California case says that or what California law says that. Now, just focusing on state law for a moment. Okay. Back to state law. It actually would start with the civil court, which says that only the lender can initiate foreclosure. That only the lender can determine that there's a default. But doesn't the court say that you don't have to prove who the lender is? So CRC is the trustee. The trustee says it's acting at the behest of the lender. The lender is represented as a trust, I guess, by Bank of America, and the servicer is Chase. So I guess I don't see what you're saying is the fault here is not that there isn't a lender. We know there's a lender because somebody had to lend the $2.5 million. Your concern is, well, there has to be proof for the benefit of the borrower as to who the lender is. And I don't see any state law that says that. Is there some state law that requires proof of who the lender is for the benefit of the borrower? Let's consider Saatchi v. Murr's Mortgage Electronics Registration, which said that plaintiff's wrongful foreclosure claim against an entity alleged to have no beneficial interest in the deed of trust when it acted to foreclose. Well, we upheld the use of Murr's and Mr. Bondi's. It said the court expressed dismay when confronted with counsel's argument, suggesting that someone can seek to obtain foreclosure regardless of whether or not he has established authority to do so. It's dismaying to say to the millions of homeowners, we don't care who the lender is, even though your contract requires that the lender initiate. We don't care. It's a bank. Give them your house. Okay. So we said in Cervantes, when we upheld the use of Murr's, here Murr's did not initiate foreclosure. The trustee initiated foreclosure in the name of the lender. Even if Murr's were a sham beneficiary, the lender would still be entitled to repayment of the loans and would be the proper parties to initiate foreclosure. So we upheld that sort of structuring of the loan arrangement and the foreclosure that was done and initiated by Murr's through the trustee. Why doesn't that apply here? If they can find ñ if we can find who the lender is, foreclosure works. If we don't know who the lender is, it's just stealing a house. So on your ñ that's a characterization, but let me ask what relief you seek. Let's assume you can never find out who the lender is. Is it your view that the current situation can continue, which is that your client doesn't pay on the note and gets to keep the house, too? No, I think where this is leading is that eventually we will find out who is actually ñ Well, but that's ñ you're now seeking to enjoin a foreclosure. Is it your position that your client can remain in the house and not pay on the note until somebody demonstrates to her who owns the note? Yes, there are a growing number of cases ñ Is that your position? Yeah, the tender is not necessary before the sale, and the cases are swelling. No, I understand, but your position is that let's assume they've lost the note, can't find it. You may remain forever ñ client may remain forever and never pay? I've never alleged that it matters who has the note. It doesn't matter. I understand that that's resolved. Counsel, you're not really answering the question, and I'm interested in the answer, too. In your view, does your client have to at any point pay on the note to remain in the house? Certainly. Okay, when and how much? As soon as we identify who the lender or the beneficiary is. The trust that you mentioned earlier was terminated in October of 2010. The lender, as according to both sides, no longer even exists. Doesn't that get us past a motion to dismiss? Well, I'm still trying to figure out why it is you don't deny that your client has an obligation on the note. That's not the issue of this case. Well, there is that. Well, but that's not an issue that I see raised in this case. If it was the contract. But I don't see you in this case seeking to void the note. Are you seeking to void the note? Seeking to rescind the deal? Give the house back and ñ see, I don't think you're seeking to rescind the deal. If you were seeking to rescind the deal, you'd be looking to give the house back, get off the note. I think they'd be very happy with that result, given that there's no anti-deficiency ñ there's no deficiency here. I think you guys could come up with a rescission of this deal right away. But that's not what you're seeking. You're seeking to keep the deal but not pay on your side. Until we find out who is the money. Right. I understand. Right. I understand. And if they never find out, then you never have to pay. Pardon? If you never find out who owns the note, then you never have to pay. I don't think that can happen. The paperwork is going to be there, but the bank isn't sharing it. We're on a motion to dismiss here. What I'm having difficulty with, and I don't mean to ñ I think we're talking past each other here, is let's assume you find out who owns the note. They bring you absolute proof. How is your situation any different than it is today? You still have to pay on the note to stay in the house. If you paid today ñ so I'm not sure what relief you get if you find out who has the note. The relief is that if we now pay off the wrong entity, then the title is no good because the lender, whoever they are, can still come back in five years, in ten years. Well, but they can't. There's an anti-deficiency statute, and the trustee on the deed of trust will be bound at that point to give you a good title to the property. The lender's not. The lender doesn't have any title to the property. It's only the trustee on the deed of trust, isn't it? But they have a contract that says they will be paid. And if they're not paid, that remains a burden. It remains an obligation. If I borrow money from you and then I pay you back, you can still come after the money. You might try to get it from the other justice, but you can come after me for it too. That's the problem in these cases, is that the homeowners are being forced to lose title to an entity that in many cases probably is not entitled to it. Those cases are going to plague us for decades. The real property doesn't go away. Counsel, you have exceeded your time, but we asked a lot of questions, so you may have one minute for rebuttal when the time comes. Thank you. We'll hear from you. Opposing counsel? Michael Tanit for J.P. Morgan in California Reconveyance. Following up on your discussion with Mr. Gillies in regard to the state law cases, I just wanted to state that the commercial code is 3301. I think it's cited in the briefs. That provides that a person is entitled to enforce the instrument. The person entitled to enforce the instrument includes the holder of the instrument as well as a nonholder in possession of the instrument who has the rights of a holder. And in this particular case, it's clear that California Reconveyance, as was indicated in your prior discussion with Mr. Gillies, is the trustee, and I think it is also clear under Provision 3.1 of the P&A agreement that was signed on September 25, 2008, that J.P. Morgan acquired the assets and specifically all of the mortgages as a servicer to which J.P. Morgan. Who is the lender? Is there a lender here? I mean, somebody is out the $2.5 million, I guess. If you look at the deed of trust, it says that the Washington Mutual Bank is the lender. It was the original lender. It was the original lender, and there's a three-part basis to that. You have the lender, the person who is actually handing out the $2.5 million to Ms. Carswell in 2006, but then you also have servicing rights under the deed of trust, all of which says may be transferred. And you also have beneficiary rights, who is actually going to be the investor. In other words, we have Fannie Mae, we have Freddie Mac, and we have securitization. In this particular case, WAMU did sell the securitization rights or did sell the beneficiary rights to Bank of America, who was a trustee for LaSalle, et cetera, et cetera. So in sort of non-technical terms, does that make the beneficiaries the lender? In other words, if they were a bank, would they be the lender? So WAMU would have given them the right to receive the payment stream to? That's absolutely right. J.P. Morgan bought the rights from the FDIC to service the loan. In other words, to collect the monthly payments. But in terms of who would be the grantee at the trustee sale, it would be Bank of America. As the trustee for the investors? Yes. The securitized trust. Was the deed of trust ever amended, recorded, or was there a recorded amendment to reflect the new beneficiary of the deed of trust? There is something called a pooling and service agreement. No, I understand that, sir. But I'm asking what was recorded. Well, the deed of trust is recorded. There's an assignment of the deed of trust, which, by the way, there's a case called Calvo, which says 2932.5, which is termed, if you look at the language, that the deed of trust has to be recorded. But now it has been held under Calvo in a number of cases thereafter that it is only applied to mortgages. It is not applied to deed of trust. Well, let me ask. And maybe I'm not answering your question. I think you didn't. I think you gave me more information than I wanted. But I'm not sure you gave me the information I actually asked for. So let me ask it differently. Okay. If I were to go down to the recorder's office, the courthouse, and look to see who the beneficiary under deed of trust today is, what would I see? Well, if you would get the chain of title for this particular loan, you would see that the beneficiary is Bank of America. They did record it and it is attached to the complaint. Right. I was going to say, so that is Exhibit 2. There's so many page numbers. It's the assignment of deed of trust, which for value received grants and transfers to Bank of America, excuse me, all beneficial interest in the deed of trust. And so Bank of America is essentially the lender. Student took over WAMU's role as the lender. As the lender. And it's holding those rights as the trustee for the securitized investors. Is that correct? That is correct. Okay. So if we, in answer to the question of who is the lender, it's Bank of America under this document. As the trustee of the securitized trust. That's correct. Would this case be different in your view if this were a non-recourse situation, if this were a recourse situation? In other words, if this were a commercial transaction not subject to the anti-deficiency statutes, would the borrower be entitled to say, I'm not going to make payments until I can be sure that they're going to the right person? Under California law, it is. And there's two recent cases. It is what? What was that? I didn't understand the bottom line. Yes. The question was, is it different because this is a non-judicial foreclosure as opposed to judicial foreclosure? Sure. I would refer the Court to two recent cases, and I wrote them down. I'm assuming that you probably have read them because they're very, they get quoted a lot. Don't assume. File a supplemental citation so that we have them. It's Gomez v. G-O-M-E-S v. Countrywide at 192 Calat 4th, 1149, 2011. This was cited in your brief, wasn't it, or in the brief? I don't think so. Oh. I went through my brief. Good for me if I did. But I don't think I did. All right. Because it, and there's another case also following Gomez and actually relying on it is Debruner, which is D-E-B-R-U-N-N-E-R v. Deutsche Bank, which is 204 Calat 4th, 433 of 410. Counsel, after the argument, would you please write these down on a piece of paper? I will do. And leave copies with the deputy clerk for your opposing counsel and for the Court. I will do. Because Debruner very specifically says that non-judicial foreclosure is beneficial because it provides a very quick and brief way of doing a foreclosure. And therefore, it rejects the whole idea of what is being raised in this particular appeal, that in order to foreclose, you have to go beyond the statutory provisions of 2924 and 2924K, which is what governs a foreclosure. And they're saying, and if you look at it, and I can, I think. It says, California's non, let me just read this. And this is at the page number I cited, and I'll write it down for you. It says, California's non-judicial foreclosure scheme is set forth in Civil Code Section 2924, 29, 294K, which provides the comprehensive framework for the regulation. These provisions cover every exercise of the power of sale contained in the deed of trust. The purpose of this scheme is threefold, to provide the creditor-beneficiary with a quick, inexpensive, and efficient remedy against a defaulting debtor-trustor. And that's an answer to your question. That's why a non-judicial foreclosure is different from a judicial foreclosure such as they have in Texas. Two, to protect the debtor-trustor from wrongful loss of the property. And three, to ensure that a properly conducted sale is final between the parties. And in this particular case, as you will see in the judicial foreclosure, I'm sorry, the request for judicial notices as well as the attachments, we've had the notice of default, we've had the notice of trustee sale, and that is what it provides. That is what 2924, 2924K provide. And it is a non-judicial foreclosure. Roberts. Can I ask you a question about another aspect of the case? Can you respond to the argument on the other side that there's a RESPA violation here, that you, that Chase, J.P. Morgan, I'm sorry, in this case, failed to respond to a qualified written request? It is, yes. He does provide a qualified. He claims a purported qualified written request. And I would, and if I looked at that last night, and it's, it's a three or four-page recitation of about 64 questions. I may be off on that, but it just seemed more questions, none of which went to the servicing of the loan. Basically, it seems to me that I could just ask about that, because I was looking at it last night, too. And at least a couple of the questions say, it says, since the inception of this account, has there been any sale or assignment of the servicing rights to this mortgage account to any other party? That seems to relate to the account and the servicing. And then the other one talks about whether subservicers have serviced any portion of this mortgage account. That's question number 21. So what if a couple of them out of the letter relate to servicing? It does relate to servicing. It says, since the inception, have any subservicers serviced any portion of this mortgage account? If the answer is yes, identify the names in every one. I don't know what the term subservicer means. There's only a subservicer, but yes, it does provide to the servicing of the loan. But did your client ever respond, other than say, thank you, we've got your thing and we're looking at it? That I understand, no. So why did the district court correctly dismiss the RESPA claim in your view? Based on the fact that there are cases that are cited in the briefs, and it certainly is cited in my answering brief, that unless you can show damages for a nonresponse to a Qualified Written Request, a QWR, then there is no compensation. But we're at the motion-to-dismiss stage. Why? I mean, I tend to agree with you. It's hard to imagine damages from because one could simply pay the note. But at the motion-to-dismiss stage, should this have been dismissed? Actually, the cases we cited were at the motion-to-dismiss stage. So it's an element that has to be fled in the complaint? Is that correct? That's correct. That's my understanding. And it's in the cases that I cited. Is there any other questions? So if a so we think that Bank of America, let's say, is stands in the shoes of the lender. What if that's wrong and there's some other lender, as opposing counsel suggests, there might be some other entity claiming to be a lender, and there's the nonjudicial foreclosure, the house is sold or taken by the bank, and this other lender comes up, then what happens? Nothing happens, Your Honor. There is no recorded case that I've seen that that's ever happened with regard to one of these nonjudicial foreclosures. In other words, all of the interest that is held by the bank is given to the grantee, and the deed of trust would be canceled at that point. So there would be no legal document. I mean, there's cases in California I can provide that to you that show there's just nothing in existing. So let's say that, and I have had competing liens, but I've never had anybody with a competing interest in the same first lien. In other words, it's recorded. There is a deed of trust that's been recorded. There is nothing prior to our deed of trust. So one of the things you're saying. So it's a clean chain of titles. It is a clean, yes. That's very good. It's a clean chain of titles. And because of the anti-deficiency statute, the borrower, I know that's not the borrower in the deed of trust, it's the trustor. The trustor on the deed of trust has no future liability once the nonjudicial foreclosure has occurred. Yes. And in California, I will tell you from experience, that is ferociously enforced. Even into HELOCs that are entered into at the same time, they cannot even go forward with that if it was given at the same time that the first deed of trust was given. Any other questions?  Okay. Thank you. Thank you. Mr. Gillies, you may have one minute for rebuttal. I feel like I've just attended the trial because so many facts were raised that have not been explored due to the fact that we're here on a motion to dismiss. Well, the documents that were attached to the pleadings, the underlying documents, the deed of trust, and the assignment of the deed of trust. Yes, but the assignment of the deed of trust, which took place years after this loan was transferred to the WAMU Trust, suddenly Chase, acting through CRC, is able to assign the beneficial interest in a note that's owned by a trust. They're able to assign that interest to Bank of America. How did they do that? It's done with, it's a magic trick. Since when was CRC or Chase authorized to transfer the beneficial interest? Well, given that these documents are recorded as the chain of title, what, you know, then they recite that there was consideration. Does it matter what the consideration was? Well, the fact that the documents are recorded does not mean that the facts in those documents are true. You can take judicial notice of an assignment of deed of trust and say, yes, it's there, but you cannot take judicial notice of the facts that are contained within that. That's, well, let me just give you a case on that. If it's not cited in your brief. No, because these cases have happened since we briefed. Okay. You have the same instructions as opposing counsel. If there are cases you'd like us to consider that were not cited in the briefs, please write those down after argument and leave them with the deputy clerk for your opposing counsel and for us. Okay. May I send you a letter on that? No, just please send the citations in. We understand what your point is with them, and we'll read the cases. Okay. Thank you. The case just argued is submitted, and we appreciate very much the arguments of both of you. And, again, our thanks for your willingness to come in ahead of the earlier schedule.
judges: Graber, Ikuta, Hurwitz